## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMSC-024

Filing Date: June 10, 2021

No. S-1-SC-38741

IN THE MATTER OF
WILLIAM S. FERGUSON, ESQUIRE,
An Attorney Licensed to Practice Before
the Courts of the State of New Mexico

DISCIPLINARY PROCEEDING

Released for Publication August 3, 2021.

Anne L. Taylor, Chief Disciplinary Counsel
Jane Gagne, Assistant Disciplinary Counsel
Albuquerque, NM

for The New Mexico Disciplinary Board

Brant & Hunt, Attorneys
John M. Brant
Albuquerque, NM

for Respondent

## OPINION

**PER CURIAM.**

**{1}** William Ferguson, an Albuquerque personal injury lawyer, purchased a Ferrari for his personal use that he registered to his company, Motiva Performance Engineering, LLC. In a suit for damages to the Ferrari, he represented to the court and the parties that the Ferrari belonged to Motiva. But when he thought that he could evade a judgment against Motiva by claiming that the Ferrari belonged to him, he told another court the opposite: that the Ferrari belonged solely to him and never belonged to Motiva. These contradictory representations became the subject of disciplinary proceedings. Mr. Ferguson attempted to justify the contradictory statements by telling the disciplinary board that there are "two truths" about ownership. There are not two truths, but only one: Mr. Ferguson misrepresented facts before a court of law. We issue this public censure to admonish Mr. Ferguson for his misconduct and to caution him against engaging in similar unprofessional conduct in the future.

## I.    BACKGROUND

**{2}** Mr. Ferguson owned and operated five companies relevant to this disciplinary proceeding: Motiva; Avatar Recoveries, LLC; DealerBank, LLC; Armageddon Tool & Die, LTD (Tool & Die); and Armageddon High Performance Systems d/b/a Armageddon Turbo Systems (Turbo Systems). Mr. Ferguson was the sole owner of three of those companies—Avatar, DealerBank, and Tool & Die—and the majority owner of Motiva and Turbo Systems. In addition to being the majority owner, Mr. Ferguson was the managing member of Motiva.

**{3}** Motiva was a high-end car dealership and automotive shop that specialized in performance-enhancing vehicle modification. As a car dealership, Motiva was exempt from paying excise tax on vehicles that it acquired for resale. Vehicles that it acquired for resale were eligible for special "demonstrator" license plates. The demonstrator plates are available solely for use on vehicles that are part of a dealer's inventory, and Motiva was issued five demonstrator plates.

**{4}** In 2014, Mr. Ferguson purchased a $200,000 Ferrari which he intended to use as his personal vehicle, but he titled and dealer-registered it to Motiva. Mr. Ferguson affixed a Motiva demonstrator plate to the Ferrari expressly to avoid paying $6,000 in excise taxes that he would have owed had he put the Ferrari in his own name. Doing so was justified, in Mr. Ferguson's view, because "That's the way the business works." Mr. Ferguson used the Ferrari, titled and registered to Motiva, as his personal vehicle.

**{5}** In 2016, the Ferrari was damaged in the parking lot of Mr. Ferguson's law firm when one of Mr. Ferguson's tenants accidentally drove into it. Mr. Ferguson brought suit for damages, including punitive damages, on behalf of Motiva. He later claimed that he sued in Motiva's name rather than his own because the person he was suing was disabled: "A personal injury attorney suing a paraplegic lady wouldn't have been my first choice." In that lawsuit, Mr. Ferguson consistently and exclusively represented to the court and to the other driver's insurance company that Motiva owned the Ferrari.

**{6}** When Mr. Ferguson won that suit on behalf of Motiva, he executed a Property Damage Only Release in exchange for $9,051.51 for repairs to the Ferrari and $40,984.49 for loss of its use and its diminished value. Mr. Ferguson did not deposit those funds into his trust account for the benefit of Motiva, but into his personal account.

**{7}** The following year, one of Motiva's customers sued Motiva for faulty automotive work that destroyed the customer's vehicle. *Creig Butler v. Motiva Performance Eng'g, LLC*, No. D-202-CV-2017-01393 (*Butler* lawsuit). The case went to trial and the jury awarded the customer more than $200,000 in damages.

**{8}** Four days after the jury returned its verdict against Motiva, Mr. Ferguson transferred the Ferrari out of Motiva's name and into the name of DealerBank, another company over which he maintained control. At that time, the Ferrari was valued at $135,000 to $140,000. Mr. Ferguson freely admitted that he transferred title in an attempt to avoid execution of the judgment in the *Butler* lawsuit. He also began transferring other assets out of Motiva's name, closed down Motiva's business operations, and declared Motiva bankrupt.

**{9}** The plaintiff in the *Butler* lawsuit, unable to collect on the judgment against Motiva, moved for a declaration of ownership of the Ferrari and other assets. In the ensuing litigation, Mr. Ferguson strenuously argued that he was the sole and exclusive owner of the Ferrari and that Motiva never owned the Ferrari. Mr. Ferguson testified under oath that it was never his intent to make the Ferrari part of Motiva's inventory. Despite Mr. Ferguson's arguments to the contrary, the district court found that the Ferrari belonged to Motiva. Accordingly, the district court enjoined Mr. Ferguson from selling the Ferrari or causing it to leave the state. Despite that injunction, Mr. Ferguson pledged the Ferrari as collateral on a $120,000 bank loan; it is still encumbered.

## II. DISCUSSION

**{10}** Mr. Ferguson purchased, titled, and registered the Ferrari in the name of his car dealership, Motiva, to obtain a personal benefit. He did so with the full intention to use the Ferrari as his personal vehicle but, at the same time, he avoided paying $6,000 in excise tax because he represented that Motiva, a car dealership, owned the car. He again claimed that Motiva owned the Ferrari when he sued his tenant for damaging it, and by suing on Motiva's behalf, he felt he could avoid personal reputational harm from suing his paraplegic tenant for actual and punitive damages over minor damages to the Ferrari. In these situations, including in a court of law, Mr. Ferguson represented unequivocally that Motiva owned the Ferrari.

**{11}** On the other hand, when Motiva's ownership of the Ferrari would mean a financial loss, Mr. Ferguson explicitly denied before a court of law the very same fact that he had previously asserted in a different court—that Motiva owned the Ferrari. We agree with the disciplinary board that both of these statements cannot be true. In asserting these mutually exclusive positions, Mr. Ferguson violated his duty of candor to the court required by Rule 16-303(A)(1) NMRA. "Lawyers are officers of the court and are always under an obligation to be truthful to the court." *Woodson v. Phillips Petroleum Co.*, 1985-NMSC-018, ¶ 17, 102 N.M. 333, 695 P.2d 483. This conduct also violated Rule 16-804 NMRA because it involved dishonesty or misrepresentation.

**{12}** The sanction we impose today is solely in response to the lack of candor to the court regarding Mr. Ferguson's contradictory representations about the ownership of the Ferrari. We do not reach other questions that naturally arise from these facts because the record is not fully developed and the issues are not squarely presented. For example, we do not reach the question of whether Mr. Ferguson violated his professional duties by dealer-registering a vehicle that he intended for personal use in order to evade excise tax. Nor do we reach the question of whether Mr. Ferguson violated his professional duties by pledging the Ferrari as collateral on a loan while knowing that the Ferrari was subject to a preliminary injunction. However, should these, or other issues become ripe for our review in a future disciplinary proceeding we will not hesitate to impose further sanctions as may be appropriate. No member of the bar should understand this censure to in any way condone or encourage similar conduct.

## III. CONCLUSION

**{13}** This public censure shall be published in the *Bar Bulletin*. Pursuant to our Order of May 6, 2021, Mr. Ferguson is suspended from the practice of law for a period of ninety (90) days. Mr. Ferguson's reinstatement is conditioned on his taking the Multistate Professional Responsibility Examination no later than November 30, 2021, and receiving a scaled score of at least eighty percent (80%). Mr. Ferguson's reinstatement is also conditioned on a showing that no additional disciplinary charges have been filed against him for the conduct at issue in the *Butler* lawsuit. Ferguson shall pay costs as set forth in our May 6 Order.

**IT IS SO ORDERED.**


**MICHAEL E. VIGIL, Chief Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**